**TAX ANALYSTS, Plaintiff,**

v.

**INTERNAL REVENUE SERVICE, Defendant.**

**Civil Action No. 96–2285 (CKK).**

United States District Court,
District of Columbia.

March 31, 2000.

David A. Hubbert, J. Brian Ferrel, David M. Katinsky, Jason S. Zarin, U.S.

Department of Justice, Tax Division, Washington, DC, for plaintiff.

William A. Dobrovir, Warrenton, VA, for defendant.

## MEMORANDUM OPINION

### (Cross–Motions for Summary Judgment)

KOLLAR–KOTELLY, District Judge.

This case is before the Court on cross-motions for summary judgment filed by Plaintiff, Tax Analysts, and Defendant, the Internal Revenue Service.[1] When Plaintiff first filed this Freedom of Information Act ("FOIA") suit, it was seeking full disclosure of six categories of documents produced by the IRS's Office of Chief Counsel: Legal Memoranda ("LMs"), Litigation Guideline Memoranda ("LGMs"), Tax Litigation Bulletins ("TLBs"), Technical Assistances ("TAs"), Field Service Advice Monthly Reports ("FSA Reports"), and Pending Issue Reports ("PIRs"). This case has since been narrowed by the parties via stipulations and/or concessions as to certain issues. Congress further narrowed the case by enacting the Internal Revenue Service Reform and Restructuring Act of 1998 ("IRSRRA"), Pub.L. 105–206, 112 Stat. 685, 772 (codified as I.R.C. § 6110 (West Supp.1999)), which deprives the Court of jurisdiction over Plaintiff's claims to the extent that they pertain to TLBs, TAs "to the field," and post–1985 LGMs. As a result of these developments, the summary judgment record is quite complex.

Nevertheless, the Court finds that some of the Plaintiff's claims are amenable to summary disposition. For the reasons stated below, the Court shall grant IRS's motion for summary judgment and deny Plaintiff's motions for summary judgment as to those categories of documents that were unaffected by the motion to dismiss: LMs, PIRs and FSA Reports. Both parties' motions shall be denied as moot with respect to TLBs, post–1985 LGMs, and TAs to the field, all three of which were dismissed from the case in the context of the IRS's IRSRRA motion to dismiss. This leaves two remaining categories of documents: pre–1986 LGMS and TAs other than TAs to the field. As for the pre–1986 LGMs, the motions for summary judgment were filed at a time when neither party could have anticipated that the Court would be forced to narrow its ruling along these lines. On the present record, the Court must deny without prejudice this portion of the motions for summary judgment with the expectation that the parties will renew their motions in light of the changed landscape of this litigation. Finally, the portion of the motions pertaining to TAs will be granted in part, denied in part, and remanded to the IRS for an enhanced *Vaughn* index that will enable the Court to fully evaluate the claimed exemptions.

## DISCUSSION

As a general rule, an agency must respond to a FOIA request for information concerning its records and make those records available to the requester, unless the records fit into one of several exceptions. *See* 5 U.S.C. § 553(a)(3) and (b).[2]  "Sum-

1. The IRS has also filed a motion to strike certain of Plaintiff's exhibits. This motion will be denied without prejudice as the court has not relied on the contested exhibits in any way.

2. Plaintiff has also asked the Court to consider whether the requested documents must be made available to the public because they are "reading room" material. *See* 5 U.S.C. § 552(a)(2) (requiring agencies to "make available for public inspection and copying—

... (B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register; and (C) administrative staff manuals and instructions to staff that affect a member of the public"). The only remedy that FOIA expressly authorizes, however, is an order directing the agency to produce the records to the complainant. *See* 5 U.S.C. § 552(a)(4)(B); *Tax Analysts,* 117 F.3d at 610 (citing *Kennecott Utah Copper Corp. v. United States Dep't of the Interior,* 88 F.3d 1191

mary judgment is available to the defendant in a FOIA case when the agency proves that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." *Moore v. Aspin,* 916 F.Supp. 32, 35 (D.C.Cir.1996) (citing *Weisberg v. U.S. Department of Justice,* 705 F.2d 1344, 1350 (D.C.Cir. 1983)). The agency bears the burden of demonstrating the validity of any exemption that it asserts. *See* 5 U.S.C. § 552(a)(4)(B); *Beck v. Department of Justice,* 997 F.2d 1489, 1491 (D.C.Cir.1993) ("[c]onsistent with the purpose of the Act, the burden is on the agency to justify withholding requested documents").[3]

## I. Documents Unaffected by the Motion to Dismiss: LMs, FSA Reports, and PIRs

### A. Legal Memoranda ("LMs")

The IRS contends that LMs are shielded from disclosure by the executive or governmental deliberative process privilege, which is one of three privileges incorporated by FOIA's Exemption 5. *See* 5 U.S.C. § 552(b)(5) (providing that FOIA does not apply to matters that "would not be available by law to a party other than an agency in litigation with the agency");

*Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 862 (D.C.Cir.1980) (recognizing that Exemption 5 protects materials otherwise protected by attorney-client privilege, the work product doctrine, or the executive deliberative process privilege). The deliberative process privilege protects only those "government 'materials which are both predecisional and deliberative.'" *Tax Analysts v. Internal Revenue Svc.,* 117 F.3d 607, 616 (D.C.Cir.1997) (quoting *Wolfe v. Department of Health & Human Svcs.,* 839 F.2d 768, 774 (D.C.Cir. 1988)). As a general rule, a document is predecisional if it was "generated before the adoption of agency policy" and deliberative if it "reflects the give-and-take of the consultative process." *Coastal States,* 617 F.2d at 866; *Tax Analysts,* 117 F.3d at 616 (same). Thus, the IRS must establish that the withheld LMs "contain 'the ideas and theories which go into the making of the law' and not 'the law itself.'" *Arthur Andersen & Co. v. Internal Revenue Svc.,* 679 F.2d 254, 258 (D.C.Cir.1982) (quoting *Sterling Drug, Inc. v. FTC,* 450 F.2d 698, 708 (D.C.Cir.1971)). "[A]n agency will not be permitted to develop a body of 'secret law,' used by it in the discharge of its regulatory duties and in its dealings with the public, but hidden behind a veil of privilege

(D.C.Cir.1996)). Although the Court recognizes that *"Kennecott* left open the question whether other sources of law might authorize additional remedial orders in FOIA cases," *Tax Analysts,* 117 F.3d at 609 n. 4 (referring to *Renegotiation Bd. v. Bannercraft Clothing Co.,* 415 U.S. 1, 17–20, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974)), the Plaintiff has not demonstrated that such extraordinary relief would be appropriate in this case.

3. The Court rejects the Plaintiff's suggestion that the IRS bears the additional burden of demonstrating that it has complied with the so-called harm rule in the Internal Revenue Manual ("IRM"), which provides in relevant part that the IRS "will grant a request under [FOIA] ... unless the record is exempt from required disclosure under the FOIA and public knowledge of the information contained in the record would significantly impede or nullify IRS actions in carrying out a responsibility or function, or would constitute an unwar-

ranted invasion of personal privacy." IRM Part 1230, § 293(2). Not everything that an agency publishes has the force of a binding regulation. *See Chiron Corp. and PerSeptive Biosystems, Inc. v. National Trans, Safety Bd.,* 198 F.3d 935, 943–44 (D.C.Cir.1999) (rejecting plaintiff's argument that the NTSB's "Guidance" is automatically binding on the agency). Plaintiff has not demonstrated that the IRS intended to be bound by this language. *See id.* (stating that the agency's intent to be bound is the determinative factor). Nor is this an example of an internal policy that creates a more rigorous requirement for the Plaintiff than would otherwise be evident from the language of the FOIA. *See Morton v. Ruiz,* 415 U.S. 199, 235, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974) (finding that the agency was bound by its internal procedures where those procedures are "more rigorous than otherwise would be required").

. . . ." *Coastal States,* 617 F.2d at 867. Accordingly, this "exemption is to be applied 'as narrowly as consistent with efficient Government operation.'" *Id.,* 617 F.2d at 868 (quoting S. Rep. 89–813 at 9 (1965)).

In order to evaluate the IRS's deliberative process claim, "an understanding of the function the documents serve within the agency is crucial." *Id.,* 617 F.2d at 858 (citing *NLRB v. Sears Roebuck & Co.,* 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975)). LMs are prepared by so-called "docket attorneys" in the Office of Chief Counsel to assist in the preparation and review of proposed revenue rulings. IRS's Stmt. of Material Facts ¶ 4 ("IRS SMF").[4] Revenue rulings are official interpretations of the Internal Revenue Code and other tax materials. *Id.* ¶ 5. Before a proposed revenue ruling is published and achieves the status of precedent, *id.* ¶ 17, it must pass through a multi-faceted review process that is not complete until the Office of the Assistant Secretary (Tax Policy) at the Department of Treasury grants its final approval. *Id.* ¶¶ 12–16. As a proposed revenue ruling works its way through this process, it is accompanied by a "publication package." *Id.* ¶¶ 11, 14. Sometimes, but not always, the publication package includes a LM. *Id.* ¶ 7. According to the Chief Counsel Publications handbook, LMs may include a restatement of the proposed revenue ruling's issue and holding; justification, arguments, and lines of research that are not reflected fully in the proposed revenue ruling; and the principal arguments for reaching a contrary position. *Id.* ¶ 6. The LM serves as briefing material for the reviewers, providing a comprehensive summary of the drafter's legal research as well as the drafter's evaluation of the proposed ruling's strengths and weaknesses. *Id.* ¶ 20. At various points in the approval process the publication package may be returned to the drafter for revisions. *Id.* ¶ 21. Once approved by Treasury, revenue rulings are published in the Internal Revenue Bulletin for the information and guidance of taxpayers. *Id.* ¶ 5. There is no formal process, however, whereby the LM is conformed to reflect the final published revenue ruling. *Id.* ¶ 21.

After a proposed revenue ruling is definitively approved or rejected, the publication package is archived and can be retrieved by reference to the number of the proposed revenue ruling. *Id.* ¶ 24–25. The accompanying LM, if any, is archived with the rest of the publication package, but there is no indexing or retrieval system by which one can identify those files that contain an LM. *Id.* ¶ 27. IRS attorneys sometimes keep copies of LMs for their own reference, and may retrieve the revenue ruling file if they wish to probe the history behind a certain revenue ruling. *Id.* ¶ 27–30. Attorneys may exchange LMs informally, but they are not distributed through official channels. *Id.*

█ Applying this Circuit's law to these undisputed facts, the Court finds that the deliberative process privilege protects from disclosure those portions of LMs that do not reflect the official position of the Office of Chief Counsel. In this regard, the Court finds that LMs function like the Background Information Notes ("BINs") at issue in *Arthur Andersen,* 679 F.2d 254, 258 (D.C.Cir.1982). Like LMs, BINs are part of a proposed revenue ruling's publication package. After conducting an *in camera* review of the contested draft reve-

---

4. After a period of extensive discovery, both parties generated a vast factual record from which the Court may, if no material factual disputes exist, render judgment as a matter of law. In accordance with the local rules, both sides prepared a statement of material facts as to which there is no genuine dispute in support of their motions for summary judgment and statements of genuine issues in op- position thereto. Although the parties have identified some minor discrepancies in the record, the Court finds that there are no genuine issues in dispute such that summary judgment would be inappropriate. The vast majority of alleged disputes amount to no more than competing interpretations or characterizations of the same testimony.

nue rulings and their accompanying BINs, the D.C. Circuit noted that "the flow of the documents was from subordinate to superior. Because approval was required at each higher level, all the participants up to the Commissioner were without authority to make a final determination." *Arthur Andersen,* 679 F.2d at 259; *see also Pies v. Internal Revenue Service,* 668 F.2d 1350, 1353 (D.C.Cir.1981) (protecting draft proposed regulations and a draft transmittal memorandum that were "never subjected to final review, never approved by the officials having authority to do so, and never approved within the Legislation and Regulations Division"). Because the drafters lack ultimate authority, their views are necessarily pre-decisional.[5] Similarly, LMs are directed upward from docket attorneys to reviewers and, ultimately, to the Office of the Assistant Secretary (Tax Policy) at the Department of Treasury. Although LMs are sometimes returned to their drafters for revisions, they are not officially approved, nor do they emanate from the Office of Chief Counsel with any appearance of authority. Instead, the Court finds that LMs "reflect the agency 'give-and-take' leading up to a decision that is characteristic of the deliberative process." *Id.* at 257; *see also Coastal States,* 617 F.2d at 868 (emphasizing that documents are predecisional is they are produced in the process of formulating policy).

Contrary to Plaintiff's characterization, the Court finds that LMs are distinguishable from the General Counsel Memoranda ("GCMs") at issue in *Taxation with Representation Fund v. Internal Revenue Service,* 646 F.2d 666 (D.C.Cir.1981) ("*TWRF* ") and the Field Service Advices ("FSAS") at issue in *Tax Analysts v. Internal Revenue Service,* 117 F.3d 607 (D.C.Cir.1997).[6] Whereas GCMs and FSAs are used to promote uniformity in IRS policy, *see, e.g., Tax Analysts,* 117 F.3d at 617, LMs are tools for formulating policy. Unlike GCMs, which are "revised to reflect the final position of the Assistant Commissioner (Technical)"; "widely distributed throughout the agency," and "constantly updated to reflect the current status of an issue within the Office of Chief Counsel," *TWRF,* 646 F.2d at 681–82, LMs are not updated, officially reconciled, or widely distributed. Furthermore, LMs do not necessarily reflect the official position of the Office Chief Counsel on a given issue. This treatment stands in sharp contrast to the procedures utilized with GCMs, which "are retained by the Office of Chief Counsel, and extensively cross-indexed and digested, as well as 'updated,' much like the service provided by Shepard's." *Id.* at 682. Whereas LMs flow "upward" from staffers to reviewers, FSAs flow "outward" from the Office of Chief Counsel to personnel in the field. *See Tax Analysts,* 117 F.3d at 617. The FSA case is also distinguishable because LMs are not used to guide personnel in the field or elsewhere. Admittedly, IRS attorneys sometimes retain LMs for future reference, but such use does not automatically convert LMs to "agency law." *See Pies,* 668 F.2d at 1353–54 (noting that use as a research tool, without more, does not convert unfinalized or unapproved materials into agency working law).

In keeping with these general principles, the IRS has redacted portions of LMs that reflect the opinions and analysis of the author and did not ultimately form the basis of the final revenue ruling. Because

---

5. Of course, a document can lose its status as pre-decisional if it is later adopted or ratified by someone with the requisite authority. *See Coastal States,* 617 F.2d at 866 ("Finally, even if the document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public").

6. For this reason, the Court rejects Plaintiff's contention that the IRS has violated the consent decree in *TWRF.* Not only are LMS distinguishable from GCMs, but the IRS has provided a legitimate explanation for the decline in GCMs since the *TWRF* decision. *See, e.g.,* Kugler Decl. ¶¶ 20–29

the Court finds that this approach to segregability is consistent with the D.C. Circuit's mandate that the deliberative process privilege be applied as narrowly as possible, the Court shall grant IRS's motion for summary judgment as to LMs.

## B. Pending Issue Reports ("PIRs") and Field Service Advice Monthly Reports ("FSA Reports")

FSA Reports are generated monthly by the Office of Assistant Chief Counsel (Field Service) to track the status of responses to requests for Field Service Advice. IRS SMF ¶ 143. Each FSA Report has three parts: (1) a cover memorandum, (2) the main body, and (3) a cumulative listing of FSA assignments for the fiscal year. *Id.* ¶ 144. The cover memorandum typically lists, by case name, the FSAs that were issued that month. *Id.* ¶ 145. Typically, the case name is the name of the taxpayer to whom the FSA relates. *Id.* ¶ 146. The main body contains additional information about each FSA, including the date assigned, the number of days that have passed since the request was received, the case's name and control number, the names of the attorneys assigned to the task, the name of the requesting office, a progress report on the FSA, and an issue statement that briefly states the facts and legal issue that will be the subject of the FSA. *Id.* ¶¶ 146-47. The cumulative listing summarizes the status of all FSA requests assigned and/or completed in the fiscal year. *Id.* ¶ 148. The Office of Chief Counsel uses FSA Reports as an "inventory control report" to manage its workload. *Id.* ¶ 150. In this regard, FSA Reports help the Office of Chief Counsel monitor the progress of FSAs, coordinate with the various components of the office, and to alert recipients to emerging issues. *Id.*

PIRs perform a similar function by tracking the assignment of Technical Advice Memoranda, Private Letter Rulings,

congressional correspondence, technical assistance, revenue ruling projects, and other kinds of work performed by Office of the Associate Chief Counsel (Domestic). *Id.* ¶ 164. Prior to July, 1996, when the IRS installed a computer case-tracking system, PIRs were prepared monthly by the technical divisions within the Office of Associate Chief Counsel (Domestic). *Id.* ¶¶ 160-61. Each PIR is a list of cases, featuring six fields of information for each case: uniform issue list ("UIL") number,[7] case name (usually the name of the taxpayer), case number, issue, date opened, and the Branch assigned to the case. *Id.* ¶¶ 162-63.

In light of the D.C. Circuit's decision in *Tax Analysts*, which held in relevant part that FSAs are not protected by the deliberative process privilege, *see* 117 F.3d at 616-18, the only exemption presently at issue with respect to FSA Reports and PIRs is Exemption 3, 5 U.S.C. § 552(b)(3). *See* IRS's Mem. in Support of Mot. for Summ. J. at 38. In conjunction with I..R.C. § 6103, Exemption 3 prevents agencies from revealing "any return" or "return information." *See Tax Analysts*, 117 F.3d at 611. Return information includes the following facts:

> [A] taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, or other imposition, or offense.

***

7. The UIL numbering system, which is available to the public, is used by the IRS to identify issues in all of its management information systems. *Id.* ¶ 162.

I.R.C. § 6103(b)(2)(A). Section 6103(b) specifically excludes from this definition, however, "data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer." *Id.; see also Tax Analysts,* 117. F.3d at 611. In *Tax Analysts,* the D.C. Circuit rejected the IRS's Exemption 3 argument because the "[l]egal analyses contained in FSAs are not 'return information' under § 6103 ...." *Tax Analysts,* 117 F.3d at 616.

IRS has divided the FSA Reports into two categories: those that pertain to docketed cases, and those that pertain to cases not docketed in any court. IRS SMF ¶ 155. For those cases that have not been docketed, the IRS is withholding only the taxpayer's name and the name of the requesting office as return information. *Id.* ¶ 155; IRS's Mem. in Support of Mot. for Summ. J. at 38. For the docketed cases, the IRS is not withholding taxpayer names, which are part of the public record, *see William E. Schrambling Accountancy Corp. v. United States,* 937 F.2d 1485, 1488–89 (9th Cir.1991) (public record exception to § 6103), but it is withholding the issue statements corresponding to these identified taxpayers because they constitute return information and may or may not have become part of the public record. The IRS contends that it is too burdensome for the IRS to determine whether the issue identified in the FSA Report is part of the public record. IRS SMF ¶ 156. The IRS has adopted the same approach for PIRs: release of return information that can be readily identified as part of a public record, and redaction of return information that is either (1) not part of the public record or (2) cannot be readily identified as part of the public record. *Id.* ¶ 175.

■ The Court agrees with the IRS that the FSA Reports and PIRs have been properly redacted to protect return information. Furthermore, the IRS has substantiated its claim that it is too burdensome for the IRS to determine whether

the issue statements in docketed cases have become part of the public record. *See* Def.'s Mot. for Summ. J. Ex. 4 (Butler Decl.). Because the IRS has redacted these documents in accordance with the applicable law, the Court shall grant the IRS's motion for summary judgment with respect to FSA Reports and PIRs.

## II. Documents Affected by the Motion to Dismiss: TLBs, LGMs, and TAs

### A. Tax Litigation Bulletins ("TLBs")

In a memorandum opinion and order issued this same day, the Court granted IRS's motion to dismiss Plaintiff's TLB claim in its entirety. This ruling renders moot the cross-motions for summary judgment as to TLBs.

### B. Litigation Guideline Memoranda ("LGMs")

At the same time as the Court.dismissed Plaintiff's TLB claim, the Court granted the IRS's motion to dismiss as to LGMs issued after December 31, 1985. According to the Plaintiff, this does not resolve the LGM claim in its entirety because that claim included pre–1986 LGMs. IRS contends Plaintiff's FOIA request did not include pre–1986 LGMs or, in the alternative, that any LGMs created prior to 1986 were "obsoleted" and/or destroyed pursuant to a 1988 overhaul of the LGM system. Because it was raised as a tangential issue in the context of IRS's motion to dismiss, this issue has not been adequately briefed by either side. Moreover, the summary judgment briefs do not specifically identify those LGMs, if any, that were created prior to 1986, making it extremely difficult for the Court to rule on the validity of IRS's decision to withhold some or all of these documents if indeed they do exist and were fairly encompassed by Plaintiff's FOIA request. Reluctantly, the Court shall deny the cross-motions for summary judgment without prejudice and set forth a briefing schedule for renewed motions for

summary judgment on the narrow issue of the pre–1986 LGMs.[8]

## C. Technical Assistances ("TAs")

TAs are prepared by the four technical divisions within the Office of Associate Chief Counsel (Domestic): the Office of Assistant Chief Counsel (Passthroughs & Special Industries), the Office of Assistant Chief Counsel (Income Tax & Accounting), the Office of Assistant Chief Counsel (Corporate), and the Office of Assistant Chief Counsel (Financial Institutions & Products). IRS SMF ¶ 81. These technical divisions prepare TAs in response to requests from many different offices for many different purposes. The IRS has attempted to categorize the TAs by requester. *Id.* ¶ 84. One such category, TAs to the district or regional offices of the IRS or Office of Chief Counsel, or Service Centers ("the field") were dismissed from the case in the context of the IRS's motion to dismiss. Four categories remain: TAs to program managers in the national office, TAs to component offices of the national Office of Chief Counsel ( intra-national office TAS), TAs to specific taxpayers, and TAs to federal and state government agencies. *Id.* ¶¶ 84, 89. Within each of these four categories, the TAs can be further categorized by their purpose. For example, TAs to program managers fall into eight different categories, and intra-national office TAs fall into four different categories. *Id.* ¶¶ 87–88.

To further complicate matters, the IRS is raising a host of different exemptions to justify withholding some or all of the TAs that were responsive to Plaintiff's FOIA request. The IRS is asserting Exemption 3 in conjunction with I.R.C. § 6103 over portions of TAs that contain factual, taxpayer-specific information. The IRS is also asserting Exemption 3 in conjunction

with certain treaties between the United States and the governments of Australia and Canada. Invoking Exemption 5, the IRS is withholding some or all of certain TAs pursuant to the deliberative process privilege, the attorney work-product privilege, and the attorney-client privilege. Finally, the IRS contends that Exemption 7(E) justifies withholding TAs prepared for law enforcement purposes. In support of these claimed exemptions, the IRS has submitted voluminous affidavits, a *Vaughn* index, *see generally Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973), and, by stipulation of the parties, a sampling of TAs for *in camera* review.

### 1. Exemption 3

The Exemption 3 arguments can be disposed of in short order. As set forth above, section 6103 prohibits disclosure of return information. Cognizant of the D.C. Circuit's recent pronouncement that "[l]egal analyses contained in FSA are not 'return information' under § 6103," *Tax Analysts,* 117 F.3d at 616, the IRS maintains that it will redact only factual, taxpayer specific information from the TAs at issue. Plaintiff's conclusory attempts to impugn the integrity of the IRS's representations are insufficient to defeat the IRS's motion for summary judgment on this issue.

As for the IRS's efforts to defend its redactions by reference to certain treaties between the United States and Australia and Canada, the Court must agree with Judge Kessler that this issue merits further briefing. Both parties have taken very generalized positions without adequate analysis of the treaties at issue, without fully exploring the purpose and history of Exemption 3, and, on the IRS's part, without an adequate explanation of

**8.** This is **not** an invitation for the parties to rehash legal issues that have already been briefed; to the extent that the parties are relying on their earlier legal arguments, they shall incorporate them in their renewed motions by way of specific references to the

record. The Court anticipates that the renewed motions will address the IRS's as-of-yet unsubstantiated claim that pre–1986 LGMs were not part of Plaintiff's FOIA request, do not exist, or should not be disclosed because they have been "obsoleted."

the material withheld and why disclosure would violate the treaty.

## 2. Exemption 5

The IRS has invoked all three privileges embodied by Exemption 5: the deliberative process privilege, the attorney-client privilege, and the attorney work product privilege. *See Coastal States,* 617 F.2d at 862 (recognizing that Exemption 5 protects materials otherwise protected by attorney-client privilege, the work product doctrine, or the executive deliberative process privilege). On the present record, the Court finds that it cannot resolve the applicability of these exemptions using the IRS's suggested categorical approach.

### a) Deliberative Process Privilege

The basic thrust of the IRS's deliberative process argument is that intra-national office and program manager TAs are both predecisional and deliberative because they flow "horizontally" as part of a discussion or dialogue between equals. In this regard, the IRS likens these TAs to LMs, which flow upward to assist higher level reviewers as they develop revenue rulings, and tries to distinguish these TAs from TAs to the field and FSAs, which flow authoritatively downward or outward from the Office of Chief Counsel to be applied by the field to taxpayers. In the abstract, this argument has some force; if these offices are really working together to develop a policy or to make a decision, TAs might indeed play such a role.

The problem with these arguments, however, is that such broad categorical statements about the intra-national office and program manager TAs are not corroborated by the TAs submitted for *in camera* review. This sample of TAs are a very diverse group of documents, ranging from fairly straightforward exposition of a particular area of tax law that appear to represent the considered view of the office that has primary jurisdiction over the subject matter, to comments on legislative proposals and "circulation drafts" of proposed forms and schedules. Yet the *Vaughn* index recycles the same justification for withholding all of these documents without regard to the differences among them. This cookie-cutter approach cannot withstand close scrutiny. *See Campbell v. United States Dep't of Justice,* 164 F.3d 20, 20 (D.C.Cir.1998) ("An affidavit that contains merely a 'categorical description' of redacted material coupled with categorical indication of anticipated consequences is clearly inadequate") (quoting *PHE, Inc. v. Department of Justice,* 983 F.2d 248 (D.C.Cir.1993)). The IRS further contends that the allegedly privileged material is so intertwined with the non-privileged material that it cannot be segregated, without demonstrating that this is indeed the case. The documents do not speak for themselves on this subject, however, nor does the *Vaughn* provide an adequate explanation.

■ The *Mead Data* court asserted that "agencies must be required to provide the reasons behind their conclusions in order that they may be challenged by FOIA plaintiffs and reviewed by the courts." *Mead Data,* 566 F.2d at 261. To demonstrate that the agency has made reasonable efforts to segregate parts of documents for disclosure, it must be prepared to "describe what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document." *Id.* For instance, if the exempted portions were generally grouped within a paragraph or section of the document, or if only a small part of the whole document was exempt, the agency would have less reason to withhold the entire document than if the exempted portions were distributed equally throughout the document at every line. *Id.* Although the IRS's *Vaughn* is admirable for its detailed explanations of the different types of information contained in each TA and a thorough overview of the law, the *Vaughn* does not connect the information withheld in a given paragraph or sentence to these generalized statements of the law. Without

guidance on how to apply the IRS's legal analysis to these documents, the Court can only guess at why, as the IRS has asserted, each and every paragraph of the withheld TAs is part of the deliberative process. Accordingly, the Court shall remand this portion of the case to the IRS to supplement its *Vaughn* index and accompanying affidavits to include necessary information.[9]

### b) Work–Product Privilege

The same difficulty arises when the Court attempts to evaluate the IRS's work-product privilege arguments. The IRS contends that the work-product doctrine protects material prepared for use in cases in court, such as recommendations for whether the IRS should settle a given case or a proposed litigation strategy. *See Tax Analysts*, 117 F.3d at 619–20. The aforementioned deficiencies in the IRS's *Vaughn* index and the cursory treatment of this issue in the briefs precludes summary judgment on this record.

### c) Attorney–Client Privilege

The IRS has narrowed its reliance on the attorney-client privilege as a basis for withholding to one paragraph of TR–45–155–94. *See* IRS's Opp'n to Pl.'s Supp. Mot. Summ. J. at 2 n.2. The IRS maintains that this paragraph contains communications from field personnel that would reveal the scope, direction or emphasis of audit activity. *See Tax Analysts*, 117 F.3d at 619–20. Unlike the previously discussed portions of the Vaughn index, the discussion of this document is quite specific, providing that "Paragraph 8 specifically discusses particular actions an examiner should take during the Service's audits of a certain class of taxpayers, as well as how much weight should be accorded by the examiner to certain types of evidence that may be submitted by the taxpayer in order

to support its position during the course of such an audit." *See* IRS's Opp'n to Pl.'s Supp. Mot. Summ. J. Ex. A at 94 (revised Vaughn index for TR–45–155–94). Upon review of the IRS's in camera submission, the Court finds that this description is both a fair characterization of this paragraph and an adequate basis for redaction of this information. *See Tax Analysts*, 117 F.3d at 619–20. The IRS's motion for summary judgment shall be granted as to this narrow issue.

### 3. Exemption 7(E)

The IRS is withholding portions of approximately sixty TAs pursuant to Exemption 7(E), *see* IRS SMF ¶ 114, which protects from disclosure information

compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . .

(E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

5 U.S.C. § 552(b)(7). According to the IRS, the withheld TAs "were prepared in connection with a number of different types of law enforcement purposes, *e.g.*, examinations (audits), administrative appeals of examinations, claims for refund, tax litigation, and bankruptcy litigation, for the purpose of administering the internal revenue laws and enforcing compliance by taxpayers with the requirements of the Internal Revenue Code." IRS SMF ¶ 114. Plaintiff objects that this argument sweeps too broadly, encompassing far more material than Exemption 7(E). Beyond that, the parties have not developed their positions in much detail. The Court finds that its resolution of this issue would be greatly

---

9. As the Court already stated in the context of LGMs, the Court is looking for very targeted supplemental briefs that address its areas of concern. To the extent that either party is

relying on material previously submitted, such material should be incorporated by specific reference to the document and page number where it can be found.

aided by submission of a supplemental *Vaughn* index on this subject to illuminate the parties' renewed cross-motions for summary judgment.

## CONCLUSION

For the foregoing reasons, the Court reaches the following conclusions with respect to each category of documents:

- with respect to TLBS, post–1985 LGMs, and TAs to the field, the cross-motions shall be denied as moot;
- with respect to LMs, PIRs, FSA Reports, TAs withheld pursuant to Exemption 3 in conjunction with I.R.C. § 6103, and one TA withheld pursuant to Exemption 5 and the attorney-client privilege, the Court shall grant IRS's motion and deny Plaintiff's motions; and
- with respect to the remaining LGMs and TAs, the Court shall deny the cross-motions without prejudice and set forth a schedule for submission of a supplemental *Vaughn* and renewed motions for summary judgment.

An order accompanies this memorandum opinion.

## ORDER

### (Cross–Motions for Summary Judgment)

For the reasons stated in the accompanying memorandum opinion, it is, this 31. of March, 2000, hereby

**ORDERED** that Defendant's Motion to Strike [# 33] is DENIED WITHOUT PREJUDICE; it is further

**ORDERED** that Plaintiff's Motion for Summary Judgment [# 19] and Plaintiff's Supplemental Motion for Partial Summary Judgment [# 69] are

- DENIED AS MOOT with respect to TLBs, post–1985 LGMs, and TAs to the field,
- DENIED WITHOUT PREJUDICE with respect to pre–1986 LGMs and TAs *other than* (a) TAs to the field

and (b) TAs withheld pursuant to (i) Exemption 3 in conjunction with I.R.C. § 6103 and (ii) one TA withheld pursuant to Exemption 5 and the attorney-client privilege, and

- DENIED WITH PREJUDICE with respect to LMs, PIRs, FSA Reports, and TAs withheld pursuant to (a) Exemption 3 in conjunction with I.R.C. § 6103 and (b) one TA withheld pursuant to Exemption 5 and the attorney-client privilege,

it is further

**ORDERED** that Defendant's Motion for Summary Judgment [# 20] is

- DENIED AS MOOT with respect to TLBs, post–1985 LGMs, and TAs to the field.
- DENIED WITHOUT PREJUDICE with respect to pre–1986 LGMs and TAs *other than* (a) TAs to the field and (b) TAs withheld pursuant to (i) Exemption 3 in conjunction with I.R.C. § 6103 and (ii) one TA withheld pursuant to Exemption 5 and the attorney-client privilege, and
- GRANTED with respect to LMs, PIRs, FSA Reports, and TAs withheld pursuant to (a) Exemption 3 in conjunction with I.R.C. § 6103 and (b) one TA withheld pursuant to Exemption 5 and the attorney-client privilege,

and it is further

**ORDERED** that the following filing schedule shall govern for resolution of all outstanding issues, which include pre–1986 LGMs, Exemption 3 in conjunction with treaties, and various issues pertaining to TAs:

May 30, 2000 Defendant's supplemental *Vaughn* index and renewed motion for summary judgment

June 30, 2000 Plaintiff's *combined* renewed motion for summary judgment and opposition to the Defendant's renewed motion for summary judgment

July 17, 2000 Defendant's *combined* opposition to Plaintiff's renewed motion for summary judgment and reply in support of Defendant's renewed motion for summary judgment

July 31, 2000 Plaintiff's reply in support of Plaintiff's renewed motion for summary judgment.

**SO ORDERED.**