**TAX ANALYSTS, Plaintiff,**

v.

**INTERNAL REVENUE SERVICE, Defendant.**

**No. CIV.A. 99–0372(RMU).**

United States District Court, District of Columbia.

Aug. 5, 2002.

William A. Dobrovir, Warrenton, VA, Cornish F. Hitchcock, Washington, DC, for Plaintiff.

Stuart D. Gibson, Christopher J. Kayser, U.S. Department of Justice, Washington, DC, for Defendant.

## *MEMORANDUM OPINION*

URBINA, District Judge.

GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

This matter comes before the court on the parties' cross-motions for summary judgment. Tax Analysts ("the plaintiff"), a nonprofit corporation, brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking disclosure of certain records maintained by the Internal Revenue Service ("the defendant" or "IRS"). For the reasons that follow, the court grants the defendant's motion for summary judgment and denies the plaintiff's motion for summary judgment.

### II. BACKGROUND

Tax Analysts is a nonprofit corporation whose primary public education function is to publish and disseminate information concerning the "enactment and administration of the tax laws of the United States and the several states, the adjudication of tax cases by courts and other tribunals of the United States and the several states, and other subjects relating to taxation." Compl. at 1–2. On November 19, 1996, May 5, 1998, and December 1, 1998, Tax Analysts sent FOIA requests to the IRS. *Id.* at 3–4. It sought all records of the IRS relating to the Pacific Association of Tax Administrators ("PATA"), including its meetings, deliberations, decisions and staffing. *Id.* at 3. The PATA consists of the United States, Japan, Australia, and Canada. *Id.* PATA members discuss tax administration issues of joint concern, including cross-border tax avoidance, tax evasion, and other international tax issues. *Id.* at 2; Answer at 2. In addition, the December request specified the release of all records of the IRS relating to the "Group of Four" meetings ("G–4"), consisting of the United States, United Kingdom, France, and Germany. Compl. at 4. The IRS processed about 57,000 pages of responsive records, produced in whole or in part, and prepared an index identifying the withheld or redacted documents with the corresponding claimed exemption under 5 U.S.C. § 552(b)(3), (5), and (6). Stipulation dated Oct. 15, 2001 ("Stipulation") at 1–2.

On February 17, 1999, Tax Analysts filed this suit for failure to produce all the information sought in the FOIA requests. *Id.* at 1, 5. Tax Analysts narrowed this case to only the claimed exemption under 5 U.S.C. § 552(b)(3), leaving exemptions 5 and 6 uncontested. *Id.* at 2. Some of the specific information requested includes the identification of the countries with respective documents, the disclosure of countries' representatives, and other material associated with a foreign country's tax law. Pl.'s Opp'n to Def.'s Mot. for Summ. J. & Pl.'s

Cross–Mot. for Summ. J. ("Pl.'s Opp'n & Cross–Mot.") at 9–12.

On June 14, 2001, the court issued an order granting the plaintiff's motion to withdraw as moot its initial motion for partial summary judgment because Congress had recently enacted 26 U.S.C. § 6105 (2000), codifying treaty secrecy provisions such as the nondisclosure language in dispute here. Order dated June 14, 2001; Def.'s Mot. for Summ. J. at 2 n. 3. Both parties now move the court for summary judgment. In short, they dispute whether the IRS can properly withhold the requested information pursuant to the treaty secrecy exemption set forth in 26 U.S.C. § 6105(c)(1)(E). Stipulation at 2.

## III. ANALYSIS

### A. Legal Standard for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C.Cir.1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252, 106 S.Ct. 2505. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C.Cir.1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C.Cir.1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted).

### B. The Defendant Properly Withheld Information Requested Pursuant to Exemption 3

FOIA mandates the disclosure of all nonexempt information requested by specific parties. 5 U.S.C. § 552(a)(3); *Judicial Watch of Florida, Inc. v. U.S. Dep't of Justice*, 102 F.Supp.2d 6, 10 (D.D.C. 2000) (Urbina, J.). "Summary judgment is available to the defendant in a FOIA case when the agency proves that it has fully discharged its obligations under FOIA, after the underlying facts and the inferences

to be drawn from them are construed in the light most favorable to the FOIA requester." *Moore v. Aspin*, 916 F.Supp. 32, 35 (D.D.C.1996) (citing *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C.Cir. 1983)). The agency bears the burden of showing that there is no genuine issue of material fact by proving the validity of the exemptions it asserts. *Weisberg*, 705 F.2d at 1350; *Tax Analysts v. IRS*, 152 F.Supp.2d 1, 9 (D.D.C.2001), *rev'd in part on other grounds*,[1] 294 F.3d 71 (D.C.Cir. 2002). Exemption 3 specifically allows an agency to withhold or redact information prohibited from disclosure by another statute if the statute "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3)(B); *Flores v. Executive Office for United States Attorneys Freedom of Info./Privacy Act Unit*, 121 F.Supp.2d 14, 16 (D.D.C.2000) (Urbina, J.).

In the case at bar, various countries exchanged information at the PATA and G–4 tax conventions pursuant to a nondisclosure provision, which the parties agree is consistent with the United States Model Income Tax Convention ("U.S. Model Treaty" or "Art. 26, cl. 1"). Stipulation at 2–3. The relevant language is as follows:

> Any information received by a Contracting State shall be treated as secret in the same manner as information obtained under the *domestic laws* of that State *and* shall be disclosed only to persons or authorities (including courts and administrative bodies) involved in the assessment, collection, or administration of, the enforcement or prosecution in respect of, or the determination of appeals in relation to, the taxes covered by the convention or the oversight of the above.

*Id.* (emphasis added) (quoting U.S. Model Treaty Art. I, cl. 1). As discussed *supra*, Congress codified the quoted nondisclosure provision when enacting 26 U.S.C. § 6105 in December 2000. Entitled "Confidentiality of Information Arising Under Treaty Obligations," Section 6105(a) states, "Tax convention information shall not be disclosed." 26 U.S.C. § 6105(a). "In doing so, Congress addressed the very issue [the] plaintiff raised in its motion for [partial] summary judgment and concluded: 'Section 6105 satisfies [e]xemption 3 of the FOIA,'" validating the treaty secrecy provision as a statute under exemption 3. Def.'s Mot. for Summ. J. at 2 n. 3 (quoting H.R. Conf. Rep. No. 106–1033, at 1012 (2000)).

■ Both parties agree that for the purpose of their cross-motions for summary judgment, the only question at issue is whether any information contained in the requested documents "that otherwise would not be treated as secret under the domestic laws of the United States is nevertheless treated as confidential or secret under the tax conventions and therefore would constitute tax convention information as defined by 6105(c)(1)(E)." Stipulation at 2. In other words, the *debate focuses* on whether the information requested by the plaintiff falls within the ambit of the U.S. Model Treaty in conjunction with Section 6105.

The plaintiff contends that the U.S. Model Treaty provides for the protection only of taxpayer information that appropriately corresponds with 26 U.S.C. § 6103. Pl.'s Opp'n & Cross–Mot. at 19–21. Section 6103 protects taxpayer privacy by preventing the disclosure of tax return information. *Id.* at 21. The defendant counters

---

**1.** The D.C. Circuit did not address the district court's exemption 3 ruling because neither party appealed that component of the court's judgment. *Tax Analysts v. IRS*, 294 F.3d 71, 75–76 (D.C.Cir.2002).

that notwithstanding Section 6103, Section 6105 exempts the information requested from the PATA and G–4 tax conventions because Congress enacted this section to protect information that participating countries chose not to disclose, and more specifically, "tax convention information . . . including the association of a particular treaty partner with a specific issue or matter." Def.'s Mot. for Summ. J. at 10–11 (quoting H.R. Conf. Rep. No. 106–1033, at 1011). The defendant asserts that the documents fall under Section 6105(c)(1)(E)'s definition of "tax convention information" as "any other information exchanged pursuant to a tax convention which is treated as confidential or secret under the tax convention." *Id.* at 10 (quoting Section 6105). In short, the defendant contends that the language of the U.S. Model Treaty does not restrict Section 6105, but instead requires the nondisclosure of the tax convention information in dispute here pursuant to exemption 3. *Id.* at 4.

The court concludes that the defendant can make the requisite showing, and, in contrast, the plaintiff fails to proffer any rationale beyond conclusory statements. *Greene,* 164 F.3d at 675. The court first examines the plain language used by Congress in the U.S. Model Treaty. U.S. Model Treaty, Art. I, cl. 1. The provision begins with "any information," and uses the conjunction "and" to indicate that "any information" shall be treated as secret if it is *both* protected by U.S. domestic law *and* is disclosed to only the relevant tax authorities. U.S. Model Treaty, Art. I, cl. 1; Def.'s Mot. for Summ. J. at 8. Likewise, Section 6105(c)(1)(E) provides for the protection of "*any other* information exchanged." Section 6105 (emphasis added); Def.'s Reply & Opp'n to Pl.'s Cross–Mot. for Summ. J. ("Def.'s Reply") at 2–3. The court agrees with the defendant that both the language of the treaty and the statute

show Congress's clear intent not to limit the nondisclosure provisions to information regarding individual taxpayers and also to require the release to appropriate authorities. 26 U.S.C. § 6105(b)(4); H.R. Rep. 106–1033, at 1011; Def.'s Mot. for Summ. J. at 8. In fact, Congress created an exception under Section 6105(b)(4) that "any tax convention information *not relating to a particular taxpayer*" may be disclosed only "if the Secretary determines, after consultation with each other party to the tax convention, that such disclosure would not impair tax administration." H.R.Rep. No. 106–1033, at 1011–12 (emphasis added); Def.'s Reply at 5. The defendant thus acted properly by consulting with respective tax convention members and withholding information that other countries "treated as secret." U.S. Model Treaty Art. I, cl. 1; Def.'s Reply at 5.

Nonetheless, the plaintiff insists that Section 6103 is controlling and points to a D.C. Circuit holding that Section 6103 does not protect legal analysis and legal conclusions. *Tax Analysts v. IRS,* 117 F.3d 607, 611–12 (D.C.Cir.1997); Pl.'s Opp'n & Cross–Mot. at 19. This case does not apply, however, since Section 6103 is not at issue in the case at bar. Indeed, in response to the D.C. Circuit's opinion in *Tax Analysts,* Congress enacted Section 6105, expressing its clear intent to fully exempt previously unprotected information under Section 6103 if the material qualifies as "tax convention information." *Tax Analysts,* 152 F.Supp.2d at 12; H.R. Conf. Rep. No. 106–1033, at 1008–09. Contrary to the plaintiff's position that the U.S. Model Treaty most resembles Section 6103, the defendant persuasively points out that Congress believed "the exchange of information articles [cited in Section 6105 and other nondisclosure treaty provisions] may be similar to, or represent a variation on, Article 26 of the 1996 U.S. model in-

come tax treaty." Def.'s Mot. for Summ. J. at 11 (quoting H.R. Conf. Rep. 106–1033, at 1006).

■ For the plaintiff's textual argument to succeed, the court must apply Section 6103 over Section 6105 and render superfluous the second clause of the treaty confining the release of information to relevant tax authorities. *Tax Analysts*, 152 F.Supp.2d at 12 (noting that Section 6105 is separate and distinct from Section 6103); Def.'s Reply at 4–5.

> It is a well-established principle that when interpreting statutes or contractual provisions, a court should 'absent a clear indication to the contrary, ... read the statute [or provision] so that no word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless or nugatory.'

*Air Line Pilots Ass'n, Int'l v. Pension Benefit Guar. Corp.*, 193 F.Supp.2d 209, 218 (D.D.C.2002) (quoting Norman J. Singer, Sutherland Stat. Const. § 46.03); *see also Potter v. United States*, 155 U.S. 438, 446, 15 S.Ct. 144, 39 L.Ed. 214 (1894); *United States v. Wilson*, 290 F.3d 347, 352, 356 (D.C.Cir.2002). The court agrees with the defendant's interpretation that the nondisclosure provision of Section 6105—enacted by Congress less than two years ago—restricts the release of some information exchanged under the U.S. Model Treaty, which is not independently protected under Section 6103. Def.'s Mot. for Summ. J. at 11.

In addition, another member of this court has already ruled on Section 6105(c)(1)(E), agreeing with the IRS's previous argument. In *Tax Analysts*, the court deemed persuasive the IRS's explanation that:

> although the exchange of information articles ... do not specifically set forth that the 'identity of a country' or 'identity of a treaty partner' is to remain confidential, a treaty partner seeking information from the United States expects its identity and the content of that communication to remain confidential under the treaty articles.

*Tax Analysts*, 152 F.Supp.2d at 11 n. 15 (Kollar–Kotelly, J.). This court agrees with this line of reasoning.

While the court need not consider the legislative history of Section 6105 since its plain meaning is clear, even if the court were to assess the congressional intent underlying the statute, such an analysis would support the defendant's position. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (holding that when a "statute's language is plain, the sole function of the court is to enforce it according to its terms"). Congress's recent enactment of Section 6105 indicates that it intended for tax convention information to be subject to heightened disclosure standards as opposed to enacting legislation that would protect information that was already exempt from disclosure under Section 6103. 26 U.S.C. § 6105. Furthermore, the "IRS has expressed the precise concern that Congress sought to address in enacting § 6105 ... to avoid adversely affecting the working relationship among treaty partners." *Tax Analysts*, 152 F.Supp.2d at 13. Moreover, the statute's text stating that, "any other information ... which is *treated* as confidential or secret ...," emphasizes the importance of honoring the treaty partners' expectations and actions at the time of the requested disclosure. 26 U.S.C. § 6105(c)(1)(E) (emphasis added); Def.'s Reply at 8–9.

The court concludes that the information specifically withheld by participating countries must remain exempt. The PATA and G–4 information satisfies Section 6105(c)(1)(E)'s definition of tax convention

material. 26 U.S.C. § 6105. Based on the recent expansion of FOIA's exemption 3 to include tax convention nondisclosure provisions via Section 6105, the court rules that the defendant need not produce the requested materials. In sum, the defendant has met its burden of showing that there is no genuine issue of material fact by proving the validity of the exemption it asserts. *Weisberg*, 705 F.2d at 1350; *Tax Analysts*, 152 F.Supp.2d at 9. Accordingly, the court concludes that the defendant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548.

## IV. CONCLUSION

For all these reasons, the court grants the defendant's motion for summary judgment and denies the plaintiff's motion for summary judgment. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 5 day of August, 2002.

### *ORDER*

**GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

For the reasons stated in this court's Memorandum Opinion separately and contemporaneously issued this _____ day of August, 2002, it is hereby

**ORDERED** that the defendant's motion for summary judgment is **GRANTED;** and it is

**FURTHER ORDERED** that the plaintiff's motion for summary judgment is hereby **DENIED**.

**SO ORDERED**.