**TAX ANALYSTS, Appellant,**

v.

**INTERNAL REVENUE SERVICE,**
Appellee.

Nos. 01–5231, 01–5232.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 7, 2002.

Decided June 14, 2002.

Reheaing and Rehearing En Banc
Denied August 5, 2002.*

* Circuit Judge Randolph did not participate in this matter.

72

William A. Dobrovir argued the cause for appellant/cross–appellee. With him on the briefs was Cornish F. Hitchcock.

Jonathan S. Cohen, Attorney, United States Department of Justice, argued the cause for appellee/cross-appellant. With him on the briefs were Roscoe C. Howard, Jr., United States Attorney, and Karen D. Utiger, Attorney, United States Department of Justice.

Before: EDWARDS, HENDERSON, and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

Several cases over the last two decades have required this court to consider whether records and documents of the Internal Revenue Service ("IRS" or "the Service") are exempt from public disclosure under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2000). In this case, the District Court determined that the IRS' Legal Memoranda ("LMs") and the Office of Chief Counsel's ("OCC") intradivisional Technical Assistance memoranda ("TAs") are exempt from disclosure pursuant to the deliberative process privilege encompassed in FOIA Exemption 5, 5 U.S.C. § 552(b)(5). The District Court further held that IRS need not segregate and release agency working law from TAs withheld pursuant to Exemption 5's attorney work product privilege. We affirm the District Court's judgment and adopt its reasoning and conclusions on these points.

The District Court also ordered IRS to release eight TAs, finding the information not exempt from disclosure under FOIA Exemption 7(E), because the information did not concern "investigations which focus directly on specifically alleged illegal acts, illegal acts of particular identified officials, acts which could, if proved, result in civil or criminal sanctions." *Tax Analysts v. IRS*, 152 F.Supp.2d 1, 14 (D.D.C.2001) [hereinafter "Mem. Op. II"]. This was error. We therefore reverse and remand on this point so that the District Court may reassess this material pursuant to the correct legal standard.

Finally, the District Court ruled that IRS properly withheld five TAs issued to program managers pursuant to Exemption 5's deliberative process privilege, but held that IRS must release five other such TAs. IRS appeals the latter determination as to three of the five documents that were ordered released. After reviewing the TAs *in camera*, we hold that the District Court

correctly distinguished between TAs that are part of an internal give-and-take discussion and TAs that reflect OCC's considered legal conclusions. We therefore affirm the judgment of the District Court on these issues.

## I. BACKGROUND

Tax Analysts is a non-profit organization that publishes news and other material on taxation. In 1995, Tax Analysts made a FOIA request for several categories of unpublished IRS internal memoranda. In response, the Service released certain documents but withheld others. Tax Analysts brought an action in the District Court for the District of Columbia. Pursuant to intervening legislation and a partial settlement by the parties, most of the categories of memoranda were eventually released. The two categories still at issue are LMs and certain sub-categories of TAs.

On the basis of a largely undisputed factual record, the District Court described LMs as follows:

LMs are prepared by so-called "docket attorneys" in the Office of Chief Counsel to assist in the preparation and review of proposed revenue rulings. Revenue rulings are official interpretations of the Internal Revenue Code and other tax materials. Before a proposed revenue ruling is published and achieves the status of precedent, it must pass through a multi-faceted review process that is not complete until the Office of the Assistant Secretary (Tax Policy) at the Department of Treasury grants its final approval. As a proposed revenue ruling works its way through this process, it is accompanied by a "publication package." Sometimes, but not always, the publication package includes a LM. According to the Chief Counsel Publications handbook, LMs may include a restatement of the proposed revenue ruling's issue and

holding; justification, arguments, and lines of research that are not reflected fully in the proposed revenue ruling; and the principal arguments for reaching a contrary position. The LM serves as briefing material for the reviewers, providing a comprehensive summary of the drafter's legal research as well as the drafter's evaluation of the proposed ruling's strengths and weaknesses. At various points in the approval process the publication package may be returned to the drafter for revisions. Once approved by Treasury, revenue rulings are published in the Internal Revenue Bulletin for the information and guidance of taxpayers. There is no formal process, however, whereby the LM is conformed to reflect the final published revenue ruling.

After a proposed revenue ruling is definitively approved or rejected, the publication package is archived and can be retrieved by reference to the number of the proposed revenue ruling. The accompanying LM, if any, is archived with the rest of the publication package, but there is no indexing or retrieval system by which one can identify those files that contain an LM. IRS attorneys sometimes keep copies of LMs for their own reference, and may retrieve the revenue ruling file if they wish to probe the history behind a certain revenue ruling. Attorneys may exchange LMs informally, but they are not distributed through official channels.

*Tax Analysts v. IRS,* 97 F.Supp.2d 13, 16 (D.D.C.2000) [hereinafter "Mem. Op. I"] (internal citations omitted).

As for TAs, the District Court offered the following description:

TAs are prepared by the four technical divisions within the Office of Associate Chief Counsel (Domestic): the Office of Assistant Chief Counsel (Pass-throughs & Special Industries), the Office of Assistant Chief Counsel (Income Tax & Accounting), the Office of Assistant Chief Counsel (Corporate), and the Office of Assistant Chief Counsel (Financial Institutions & Products). These technical divisions prepare TAs in response to requests from many different offices for many different purposes. The IRS has attempted to categorize the TAs by requester. One such category, TAs to the district or regional offices of the IRS or Office of Chief Counsel, or Service Centers ("the field") were dismissed from the case in the context of the IRS's motion to dismiss. Four categories remain: TAs to program managers in the national office, TAs to component offices of the national Office of Chief Counsel (intra-national office TAs), TAs to specific taxpayers, and TAs to federal and state government agencies. Within each of these four categories, the TAs can be further categorized by their purpose. For example, TAs to program managers fall into eight different categories, and intra-national office TAs fall into four different categories.

*Id.* at 20 (internal citations omitted).

The District Court reviewed sample documents *in camera,* along with a *Vaughn* index prepared by IRS. Both parties moved for summary judgment. The court granted IRS' motion as to LMs, which IRS had claimed were exempt under FOIA Exemption 5's deliberative process privilege. *Id.* at 16-18. The District Court held that the withheld portions of LMs did not constitute IRS working law and were therefore exempt under the privilege. *Id.* The District Court reasoned that, like the Background Information Notes in *Arthur Andersen & Co. v. IRS,* 679 F.2d 254 (D.C.Cir.1982), LMs were written by lower-level attorneys for use by senior deci-

sionmakers. *Id.* at 16-17. The District Court found that LMs are not officially approved by the senior decisionmakers and do not "emanate from [OCC] with any appearance of authority." *Id.* at 17.

The District Court distinguished LMs from the General Counsel's Memoranda at issue in *Taxation With Representation Fund v. IRS*, 646 F.2d 666, 670 (D.C.Cir. 1981) [hereinafter *"TWRF"*], which were used to promote uniformity in IRS policy. Mem. Op. I at 17. The court found that, unlike General Counsel's Memoranda, LMs are not updated to reflect the national office's current position, widely distributed within IRS, or officially reconciled to reflect uniform policy. *Id.* The District Court also distinguished LMs from the Field Service Advice memoranda ("FSAs") at issue in *Tax Analysts v. IRS*, 117 F.3d 607 (D.C.Cir.1997), because LMs flow "upward" from staffers to reviewers, while FSAs flow "outward" from OCC to field personnel. *Id.* (citing *Tax Analysts*, 117 F.3d at 617). Thus, the District Court upheld IRS' policy of redacting the portions of LMs reflecting the authors' opinions and analysis. *Id.* at 17-18.

With regard to TAs, the District Court ordered further briefing. *Id.* at 21-23. The court then rejected Tax Analysts' argument that IRS was required to demonstrate that it had complied with the so-called "harm rule," a policy set forth in the Internal Revenue Manual ("Manual"). *Id.* at 15 n. 3. The "harm rule" stated that IRS would grant FOIA requests unless the record is exempt and disclosure would significantly impede IRS actions in carrying out a responsibility or function. *Id.* The District Court found that the rule is non-binding. *Id.* Tax Analysts moved for reconsideration of this ruling. In Mem. Op. II, the District Court denied Tax Analysts' motion as untimely. The District Court also revisited the merits and found

that the Manual's harm rule, which had been revised, was still not binding because it lacked mandatory language and did not demonstrate that IRS intended to be bound by the policy. *Id.* at 7-8.

The District Court then turned to TAs. With respect to TAs withheld pursuant to FOIA Exemption 7(E), the court held that eight of the TAs were not exempt because they did not focus on "a specifically alleged illegal act of any particular identified case or individual," and therefore were not compiled for law enforcement purposes as the exemption requires. *Id.* at 15. With respect to TAs withheld in their entirety pursuant to the attorney work product privilege encompassed by Exemption 5, the court held that IRS was not required to segregate and release the portions of the TAs that constituted agency working law. *Id.* at 18-19.

With respect to TAs withheld pursuant to Exemption 5's deliberative process privilege, the District Court made two rulings that Tax Analysts now appeals. First, the court addressed certain TAs to program managers. These TAs contain OCC's answers to questions submitted by program managers in IRS' national office, sometimes concerning individual taxpayers. The District Court ordered IRS to release five of these TAs and rejected the request for disclosure of another five. *Id.* at 22–24. The court found that the five TAs that were held subject to disclosure are treated as final documents that represent the considered position of OCC, while those held to be exempt are merely part of a deliberative process involving OCC and IRS' program managers. *Id.* at 22-23. The court likened the TAs it ordered released to the FSAs at issue in *Tax Analysts*. *Id.* at 22.

Second, the District Court addressed intra-divisional TAs, which are issued when one component of OCC advises another component that has been assigned to cre-

ate a private letter ruling or other official document. *Id.* at 24. The District Court found that these TAs are "predecisional and deliberative," because they are solicited from a component of the agency that lacks the authority to issue a final legal decision. *Id.* at 24. The content of these TAs is "subject to modification or rejection prior to the finalization into the final work product." *Id.* The District Court thus found that these TAs are exempt from disclosure under the deliberative process privilege. *Id.* at 25.

Both parties moved for reconsideration. In *Tax Analysts v. IRS*, 152 F.Supp.2d 1, 27, Mem. Op. (Motion for Reconsideration), (D.D.C. May 21, 2001) [hereinafter "Mem. Op. III"], the District Court denied both parties' motions in relevant part. The court rejected Tax Analysts' argument that TAs withheld pursuant to the attorney work product privilege should not be protected in their entirety. *Id.* at 29. The court also restated its holding that TAs not focusing on an individual investigation were not records compiled for law enforcement purposes as required by Exemption 7(E). *Id.* at 30-31.

## II. DISCUSSION

### A. LMs, Intra-divisional TAs, the Attorney Work Product Privilege, and the IRS Manual

■ FOIA Exemption 5 protects "interagency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The exemption allows an agency to withhold those materials that would be privileged from discovery in civil litigation. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). As such, it is interpreted to encompass, *inter alia,* three evidentiary privileges: the deliberative pro-

cess privilege, the attorney-client privilege, and the attorney work product privilege. *Burka v. HHS,* 87 F.3d 508, 516 (D.C.Cir. 1996).

The District Court correctly found that LMs and intradivisional TAs do not constitute agency working law and are exempt pursuant to the deliberative process privilege. The District Court also correctly determined that the harm rule articulated in the Manual does not bind IRS or create rights in Tax Analysts. Finally, the District Court correctly determined that IRS need not segregate and release agency working law from TAs withheld in their entirety pursuant to the attorney work product privilege. Because the District Court's analysis and conclusions on these points are eminently sound, no further elaboration is necessary. We therefore affirm the District Court's judgment on these issues and adopt its reasoning and conclusions.

### B. Exemption 7(E)

The Service withheld portions of 16 TAs pursuant to Exemption 7(E). This exemption allows an agency to withhold:

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law. . . .

5 U.S.C. § 552(b)(7). The dispute in this case turns on whether IRS has shown that the disputed records or information were compiled for "law enforcement purposes."

■ There are several overarching principles that the courts follow in assess-

ing whether records or information satisfy the threshold requirement of § 552(b)(7). First, "law enforcement purposes" under Exemption 7 includes both civil and criminal matters within its scope. *Pratt v. Webster*, 673 F.2d 408, 420 n. 32 (D.C.Cir. 1982). Second, the FOIA makes no distinction between agencies whose principal function is criminal law enforcement and agencies with both law enforcement and administrative functions. *Id.* at 416. Therefore, agencies like IRS, that combine administrative and law enforcement functions, as well as agencies like the Federal Bureau of Investigation ("FBI"), whose principal function is criminal law enforcement, may seek to avoid disclosure of records or information pursuant to Exemption 7. Finally, "courts can usually assume that government agencies act within the scope of their legislated authority." *Id.* at 418. However, courts apply a more deferential standard to a claim that information was compiled for law enforcement purposes when the claim is made by an agency whose primary function involves law enforcement. *Id.* This point was amplified in *Pratt v. Webster*:

> On the one hand, the assumption that a mixed-function agency is acting within the scope of its authority tells a court nothing about whether it has met the Exemption 7 threshold requirement of a "law enforcement purpose." Law enforcement, indeed, is often one of such an agency's proper functions, but other functions are also a major part of the agency's day-to-day business. Thus, a court must scrutinize with some skepticism the particular purpose claimed for disputed documents redacted under FOIA Exemption 7. . . . If courts accept a mixed-function agency's claims of "law enforcement purpose" without thoughtful consideration, the excessive withholding of agency records which

Congress denounced and sought to avoid . . . might well result.

> On the other hand, the generally accurate assumption that federal agencies act within their legislated purposes implies that an agency whose principal mission is criminal law enforcement will more often than not satisfy the Exemption 7 threshold criterion. Thus, a court can accept less exacting proof from such an agency that the purpose underlying disputed documents is law enforcement. This less exacting judicial scrutiny of a criminal law enforcement agency's purpose in the context of the FOIA Exemption 7 threshold is further bolstered by Congress' concern that inadvertent disclosure of criminal investigations, information sources, or enforcement techniques might cause serious harm to the legitimate interests of law enforcement agencies.

*Id.* (internal citations and footnotes omitted).

■ In the instant case, the District Court correctly identified IRS as a mixed-function agency, subject to an exacting standard when it comes to the threshold requirement of Exemption 7. The District Court, however, relied on *Rural Housing Alliance v. United States Department of Agriculture*, 498 F.2d 73, 81 (D.C.Cir. 1974), in holding that a mixed-function agency may only withhold information pursuant to Exemption 7 when the information concerns "investigations which focus directly on specifically alleged illegal acts, illegal acts of particular identified officials, acts which could, if proved, result in civil or criminal sanctions." Mem. Op. II at 14 (quoting). This was error.

*Rural Housing* and its progeny apply only when an agency seeks to invoke Exemption 7 in a situation in which there is an ongoing law enforcement "investigation." The court recently explained the

development of this line of authority in *Jefferson v. Department of Justice*, 284 F.3d 172 (D.C.Cir.2002):

> In assessing whether records are compiled for law enforcement purposes, this circuit has long emphasized that the focus is on how and under what circumstances the requested files were compiled, ... and "whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." ... In *Rural Housing Alliance v. Dep't of Agriculture*, 498 F.2d 73 (D.C.Cir.1974), the court identified two types of investigatory files that government agencies compile: (1) files in connection with government oversight of the performance of duties by its employees, and (2) files in connection with investigations that focus directly on specific alleged illegal acts which could result in civil or criminal sanctions. *Id.* at 81. Again, the court emphasized that the purpose of the investigatory files "is the critical factor." *Id.* at 82. Thus, if the investigation is for a possible violation of law, then the inquiry is for law enforcement purposes, as distinct from customary surveillance of the performance of duties by government employees. *Id.* Then, in *Pratt v. Webster*, 673 F.2d 408 (D.C.Cir.1982), the court set forth a two-part test whereby the government can show that its records are law enforcement records: the investigatory activity that gave rise to the documents is "related to the enforcement of federal laws," and there is a rational nexus between the investigation at issue and the agency's law enforcement duties. *Id.* at 420, 421. The court again distinguished the need "to establish that the agency acted within its principal function of law enforcement, rather than merely engaging in a general monitoring of private individuals' activities." *Id.* at 420.

The court applied these principles in *Kimberlin v. Dep't of Justice*, 139 F.3d 944 (D.C.Cir.1998). In that case, the requester asked for "all papers, documents and things pertaining to the OPR investigation" of another AUSA. *Id.* at 947. Applying the distinction between law enforcement records and internal agency investigations set forth in *Rural Housing*, 498 F.2d at 81, the court stated that "[m]aterial compiled in the course of ... internal agency monitoring does not come within Exemption 7(C) even though it 'might reveal evidence that later could give rise to a law enforcement investigation.'" *Kimberlin*, 139 F.3d at 947. Concluding, however, that "the OPR investigation here at issue was conducted in response to and focused upon a specific, potentially illegal release of information by a particular, identified official," *id.* at 947, the court held that the information in the OPR files was compiled for law enforcement purposes. *Id.*

*Id.* at 176-77.

Appellant Tax Analysts argues that, under the *Rural Housing* test, the scope of Exemption 7 is limited to situations in which the agency can show that the disputed material relates to an *investigation* focusing directly on specific alleged illegal acts which could result in civil or criminal sanctions. We disagree. The *Rural Housing* standard is still good law, but it has no bearing on the issue in this case. The information here at issue does not relate to any ongoing "investigation" by IRS. Rather, IRS seeks to avoid disclosure of internal agency material relating to guidelines, techniques, and procedures for law enforcement investigations and prosecutions outside of the context of a specific investigation. Such materials clearly satisfy the "law enforcement purposes" threshold of Exemption 7. The District Court's holding to the contrary failed to

take adequate account of 1986 amendments to Exemption 7.

Prior to 1986, Exemption 7 required a threshold showing that the materials in question were "investigatory records compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7) (1982). However, in 1986, Congress amended the exemption to protect "records or information compiled for law enforcement purposes," deleting any requirement that the information be "investigatory." Anti-Drug Abuse Act of 1986, § 1802(a), Pub. L. No. 99-570, 100 Stat. 3207, 3207-48 (1986) (amending 5 U.S.C. § 552(b)(7)). *See North v. Walsh,* 881 F.2d 1088, 1098 n. 14 (D.C.Cir.1989) (stating that the 1986 amendment "changed the threshold requirement for withholding information under exemption 7: the exemption formerly covered 'investigatory records compiled for law enforcement purposes'; it now applies more broadly to 'records or information compiled for law enforcement purposes'"); *Keys v. United States Dep't of Justice,* 830 F.2d 337, 340 (D.C.Cir.1987) (same). And the legislative history makes it clear that Congress intended the amended exemption to protect both investigatory and non-investigatory materials, including law enforcement manuals and the like. *See* S.Rep. No. 98-221, at 23 (1983) (expressing intent to protect "sensitive non-investigative law enforcement materials" and to broaden the exemption to include records "regardless of whether they may be investigatory or noninvestigatory"). Congress also amended Exemption 7(E) to permit withholding of *"guidelines* for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law," thus giving further indication that the statutory threshold was not limited to records or information addressing only individual violations of the law. *See* 5 U.S.C. § 552(b)(7)(E) (emphasis added); S.Rep. No. 98221, at 24 (1983).

It is clear that, under the amended threshold of Exemption 7, an agency may seek to block the disclosure of internal agency materials relating to guidelines, techniques, sources, and procedures for law enforcement investigations and prosecutions, even when the materials have not been compiled in the course of a specific investigation. *See, e.g., PHE, Inc. v. Dep't of Justice,* 983 F.2d 248, 250-51 (D.C.Cir.1993) (holding that portions of a FBI manual describing patterns of violations, investigative techniques, and sources of information available to investigators were protected by Exemption 7(E)). The amended threshold to Exemption 7 "resolve[s] any doubt that law enforcement manuals and other non-investigatory materials can be withheld under (b)(7) if they were compiled for law enforcement purposes and their disclosure would result in one of the six recognized harms to law enforcement interests set forth in the subparagraphs of the exemption." S.Rep. No. 98-221, at 23 (1983). Accordingly, we reverse and remand the District Court's judgment on this point.

It will be up to the District Court in the first instance to apply the correct threshold and then to determine, as Exemption 7(E) requires, whether release of the disputed agency materials "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." The District Court may conclude that some or all of the disputed TAs must be released, but this conclusion cannot be based on the fact that they do not relate to the investigation of a particular act of wrongdoing.

## C. TAs to Program Managers

■ IRS appeals the District Court's decision with regard to three of the five TAs to program managers that the court ordered released. IRS argues that these three TAs should have been withheld pursuant to the deliberative process privilege of Exemption 5. IRS does not appeal the release of the other two TAs to program managers. Br. for Appellee/Cross-Appellant at 57 n.5 (stating that IRS does not appeal the District Court's ruling with respect to TAs numbered TR-45-1383-93 and TR-45-1974-93). The three TAs on appeal are issued to program managers within the national office of IRS.

■ The deliberative process privilege protects "confidential intra-agency advisory opinions ... disclosure of which would be injurious to the consultative functions of government." *Sears,* 421 U.S. at 149, 95 S.Ct. at 1516 (internal citations and quotation marks omitted). It encompasses "documents reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated, as well as other subjective documents that reflect the personal opinions of the writer prior to the agency's adoption of a policy." *TWRF,* 646 F.2d at 677 (citing *Sears,* 421 U.S. at 150, 95 S.Ct. at 1516). It does not, however, apply to final statements of agency policy or to statements that explain actions that an agency has taken. *Id.* In other words, it protects "predecisional communications" reflecting an agency's internal deliberations, but not communications that explain a decision that has already been made. *Sears,* 421 U.S. at 151–52, 95 S.Ct. at 1516–17. In order to determine whether the District Court applied these principles correctly, we have reviewed the three disputed TAs *in camera,* along with the five that the court ordered withheld and the two not appealed, for comparative purposes.

The District Court grouped the five TAs it ordered released into two categories. First, the court ordered the IRS to release TAs that concerned specific taxpayers or classes of taxpayers. These included the following TAs: TR-45-2233-93 (presenting OCC's legal analysis regarding a particular class of taxpayers engaged in specified activities); TR-45-1383-93 (not appealed) (presenting OCC's legal analysis and computations regarding certain transactions of a particular taxpayer); TR-45-1974-93 (not appealed) (presenting OCC's legal analysis and conclusion regarding how the program manager should apply a certain statutory provision to a particular taxpayer); and TR-45-2473-93 (presenting OCC's conclusion as to whether a particular taxpayer qualified for a specified exemption). Second, the District Court ordered the IRS to release a TA that addressed the interpretation of the internal revenue laws generally: TR-45-2820-92 (answering a question concerning whether taxpayers at large may use a particular procedure).

The District Court correctly likened these five TAs to the FSAs at issue in *Tax Analysts,* 117 F.3d 607. Like FSAs, TAs are issued by OCC and sent to IRS personnel in response to official queries. FSAs were issued to field attorneys, revenue agents, and appeals officers, while TAs are issued to program managers. *Tax Analysts,* 117 F.3d at 609. FSAs usually dealt with particular taxpayers, as do four of the TAs in this case. *Id.* The TA concerning general procedures reflects OCC's considered position on a precise issue. FSAs and these TAs both contain legal analysis, conclusions, and advice. *Id.* It is therefore unsurprising that, as the District Court found, IRS conceded that taxpayer-specific TAs to program managers are all but identical to FSAs. Mem.

Op. II at 22; Def. Statement of Genuine Issues in Opp. to Pl.'s Statement of Material Facts ¶ 3.12 (stating that IRS did not object to Tax Analysts' statement that, in many cases, the only difference between FSAs and taxpayer–specific TAs is the originating office), *reprinted at* Joint Appendix 383, 344.

The five TAs that the District Court ordered ·withheld, while not before us on appeal, nevertheless provide a useful contrast and an illustration of the kinds of documents that truly reflect a debate among equally-positioned decisionmakers. For example, in TR-955-93, OCC comments on a draft tax form and instructions for filling out another form. The TA uses markedly different language from that found in the TAs that the District Court ordered released, repeatedly prefacing comments with such phrases as "We believe" and "We suggest" and advising the recipient that the form "should" reflect a certain principle. Similarly, in TR-45-2164-93, OCC proposed solutions to a potential legal problem. In TR-45-307-93, OCC commented on a legislative proposal, expressing legal "concern[s]" about some of its language. The tone of these TAs suggest that they were prepared merely to "discuss the wisdom or merits of a particular agency policy, or recommend new agency policy, raising the possibility that their disclosure would mislead the public." *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 869 (D.C.Cir.1980). By contrast, the TAs that the District Court ordered released use such language as "It is the position of the Treasury Department that . . ." (TR-45-2233-93) and "We conclude" (TR-45-2473-93). The tone of these TAs indicates that they "simply explain and apply established policy." *Coastal States,* 617 F.2d at 869.

IRS argues that while the disputed TAs to program managers may be the final word of OCC, they are issued to program officers who make the final decisions about their programs. IRS characterizes the TAs as part of a dialogue among equals, rather than pronouncements from senior officials to junior field agents. These arguments are unpersuasive. It is not necessary that the TAs reflect the final *programmatic* decisions of the program officers who request them. It is enough that they represent OCC's final *legal* position concerning the Internal Revenue Code, tax exemptions, and proper procedures. We reach this conclusion in reliance on the fact that the disputed TAs travel horizontally, from the OCC to program officers. By contrast, documents that represent the final legal position of the *OCC* and travel upward – for example, memoranda to the Commissioner of Internal Revenue advising him on legal issues – may still be part of the *agency's* deliberative process and thus fall within Exemption 5. *See Coastal States,* 617 F.2d at 868 (noting that "a document from a subordinate to a superior official is more likely to be predecisional," and that "this court recently identified as 'a classic case of the deliberative process at work' a series of memoranda to the Assistant Secretary of the Army from the General Counsel in his department, recommending legal strategy in light of a particular controversy") (quoting *Murphy v. Dep't of the Army,* 613 F.2d 1151, 1154 (1979)).

Under the FOIA, "working law" must be disclosed whether or not those who use the working law make the final decisions about program implementation. *See id.* (holding that the disputed documents, "whatever the formal powers of [the issuing officials] to issue binding interpretations of the regulations, in practice represent interpretations of established policy on which the agency relies in discharging its regulatory responsibilities" and that they must be disclosed). Thus, the District Court cor-

rectly ordered the disputed three TAs released.

■ The distinction between deliberative TAs and TAs that represent the OCC's considered legal conclusions is not amenable to a categorical formula. It can turn on the subject matter of the TA, on its recipient, on its place in the decision-making process, and even on its tone. Nonetheless, after reviewing the ten TAs *in camera*, we are satisfied that the District Court committed no error in its judgment regarding these materials

### III. CONCLUSION

For the foregoing reasons, we affirm in part, reverse in part, and remand the case to the District Court for further proceedings consistent with this opinion.