**Lane EVANS, Plaintiff,**

v.

**UNITED STATES OFFICE OF PERSONNEL MANAGE-MENT, Defendant.**

**No. CIV.A. 03CV0055(ESH).**

United States District Court, District of Columbia.

July 30, 2003.

Mark S. Zaid, Krieger & Zaid, PLLC, Washington, DC, for Plaintiff.

James S. Carroll, III, U.S. Attorney's Office District of Columbia, Washington, DC, for Defendant.

## MEMORANDUM OPINION

HUVELLE, District Judge.

This case arises from the United States Office of Personnel Management's ("OPM") refusal to disclose a two-page memorandum requested under the Free-

dom of Information Act ("FOIA"). Defendant argues that disclosure is not required because the document is protected by FOIA's Exemption 5. Plaintiff counters that the government has failed to sustain its burden under Exemption 5 because: 1) the memorandum is neither deliberative nor predecisional, and 2) the document lost any possible protection because it was adopted by OPM as a final agency opinion in two public documents. Having reviewed the document *in camera,* the Court agrees that the government has not shown that the document is deliberative and predecisional, and therefore, it need not reach plaintiff's remaining arguments. The Court will therefore deny defendant's motion for summary judgment and deny plaintiff's cross-motion for discovery as moot.

## BACKGROUND

Plaintiff is currently serving his eleventh term in the United States House of Representatives, representing the 17th Congressional District of Illinois. (Compl.¶ 3.) He is the Ranking Democratic Member of the House Veterans' Affairs Committee. (*Id.*) Plaintiff's interest in the document stems from his personal experience as a veteran and member of the aforementioned committee, and more directly from his concern that veterans' congressionally-granted rights, privileges, and benefits are not being effectively administered. (*Id.* ¶ 5).

On September 5, 2002, plaintiff made a request pursuant to FOIA, 5 U.S.C § 552, to Kay Cole James, Director of the Office of Personnel Management. (Declaration of Mark Robbins ["Robbins Decl."] ¶ 4.) Specifically, plaintiff demanded a copy of the May 18, 1998 OPM Office of General Counsel ("OGC") memorandum relating to the use of multiple certificates to fill interdisciplinary positions.[1] (*Id.*) This request was referred to OGC for a response. (*Id.*) By letter dated September 20, 2002, Mark Robbins, General Counsel for the OPM, informed plaintiff that OPM was denying the FOIA request pursuant to Exemption 5, claiming the memo was prepared by an OGC staff member in response to an inquiry from an OPM program office regarding the permissibility of instructing examining offices not to issue multiple certificates of eligibles for vacant interdisciplinary positions.[2] (*Id.* ¶ 5, 10.) By letter dated Octo-

---

1. The term "interdisciplinary positions" refers to government jobs that can be filled by people with different skill sets. An example of the use of multiple certificates for such a position might occur where a certain position could be occupied either by an individual trained to be a geologist or by an individual trained to be a meteorologist. Here, an examining office could submit two certificates from two separate registers to the selecting official. One certificate would list the top-ranked geologists while the other certificate would list the top-ranked meteorologists.

The concern here is that the use of multiple certificates could violate the veterans' preferences that exist under federal employment law. Agencies are required to fill vacancies by appointing to the position one of the highest three eligibles on the certificate produced by OPM. *See* 5 U.S.C. § 3318(a). Veterans are considered "preference eligibles," *see* 5

U.S.C. § 2108, and an appointing authority may not pass over a preference eligible on a certificate to select an individual who is not a preference eligible without the approval of OPM. 5 U.S.C. § 3318(b)(1). In a situation with multiple certificates, however, such as the example given above, an agency could hire a non-preference eligible from the meteorologist certificate without violating the "Rule of Three" even though a preference eligible is ranked first on the geologist certificate. The concern that prompted the OGC memorandum was that this practice might violate merit system principles.

2. Plaintiff is aware of the existence of the memorandum because it is referenced in two separate documents published by OPM. In these documents, OPM set forth its view that "Examining Offices should not issue multiple certificates for single interdisciplinary posi-

ber 4, 2002, plaintiff appealed the decision of OGC to Dan Blair, the Deputy Director of the OPM. (*Id.* ¶ 6.) Mr. Blair then notified plaintiff on December 13, 2002, that OPM would uphold the decision of the OGC to assert Exemption 5. (*Id.* ¶ 7.)

Plaintiff filed the instant action on January 14, 2003, challenging OPM's denial of his FOIA request for the OGC memorandum. He seeks to have this Court order disclosure of the requested document, as well as reasonable costs and attorney's fees. Invoking the deliberative process privilege of Exemption 5, defendant has moved for summary judgment.

## LEGAL ANALYSIS

### I. Legal Standard

 FOIA was enacted in 1966 to implement a "general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *Dep't of the Air Force v. Rose,* 425 U.S. 352, 360–61, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976) (quoting S.Rep. No. 89–813 (1965)). Thus, an agency must promptly make available any records requested by members of the public, unless the agency can establish that the information is properly withheld under any of the nine exemptions set forth in the statute. *See* 5 U.S.C. § 552(b). These exemptions are exclusive and should be narrowly con-

strued. *Rose,* 425 U.S. at 361, 96 S.Ct. 1592. When a challenge is made to an agency's decision to withhold information, the burden of proof rests on the agency to sustain its decision, and the reviewing court is directed to "determine the matter *de novo.*" 5 U.S.C. § 552(a)(4)(B).

 Summary judgment is the preferred method of resolving cases brought under FOIA. *See Miscavige v. IRS,* 2 F.3d 366, 369 (11th Cir.1993) ("Generally, FOIA cases should be handled on motions for summary judgment, once the documents in issue are properly identified."). In order to prevail on a motion for summary judgment, an agency must demonstrate that no material facts are in dispute and that each document that falls within the class requested either has been produced or is exempt from FOIA's inspection requirements. *Students Against Genocide v. Dep't of State,* 257 F.3d 828, 833 (D.C.Cir. 2001); *Weisberg v. United States Dep't of Justice,* 627 F.2d 365, 368 (D.C.Cir.1980). In a FOIA action, the Court may award summary judgment to the agency on the basis of affidavits when the affidavits describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."

---

tions. It is the OPM's General Counsel's opinion (dated May 18, 1998) that issuing multiple certificates violates the Rule of Three and possibly veterans' preference if a preference eligible is certified." U.S. Office of Personnel Mgmt., Delegated Examining Operations Handbook VIII–4 (1999); *see also* Office of Merit Sys. Oversight and Effectiveness, U.S. Office of Personnel Mgmt., Veterans: Getting Their Preference? 1 (2000) ("As explained in OPM's Delegated Examining Handbook, dated October 1999, agencies should not issue multiple certificates for single interdisciplinary positions. OPM's General Counsel held

in a May 18, 1998 opinion that this practice violates the Veterans Preference Act requirement that selection must be made from the highest three eligibles on the certificate who are available for the job, and may possibly violate veterans' preference if a preference eligible is certified.")

In its motion for summary judgment, OPM suggests that these references inaccurately convey the conclusion and the rationale of the memorandum. (*See, e.g.,* Robbins Decl. ¶ 10.) However, a review of the document fails to support this suggestion.

*Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C.Cir.1981); *see also Vaughn v. Rosen,* 484 F.2d 820, 826 (D.C.Cir.1973). In the present case, however, due to the conclusory nature of the statements made by Mark Robbins in his declaration, the Court has exercised its discretion and examined the disputed document *in camera* in order to make an independent assessment of defendant's claims that the memorandum is protected under Exemption 5 and that no non-exempt material is segregable from the rest of the document.

## II. Exemption 5

■■■ Defendant claims that FOIA Exemption 5 justifies the withholding of the May 18, 1998 memorandum. Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This provision "exempt[s] those documents, and only those documents, normally privileged in the civil discovery context." *N.L.R.B. v. Sears, Roebuck & Co.,* 421 U.S. 132, 149, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); *see also FTC v. Grolier, Inc.,* 462 U.S. 19, 26, 103 S.Ct. 2209, 76 L.Ed.2d 387 (1983); *Martin v. Office of Special Counsel, Merit Sys. Prot. Bd.,* 819 F.2d 1181, 1184 (D.C.Cir.1987). The privileges that are incorporated into Exemption 5 include the deliberative process privilege, the attorney work-product privilege, and the attorney-client privilege. *See Sears,* 421 U.S. at 149, 95 S.Ct. 1504. Only the deliberative process privilege has been asserted here.

■■■ The deliberative process privilege exempts from disclosure documents reflecting predecisional agency deliberations. The privilege is designed to encourage frank and uninhibited communication among government officials in the course of creating public policy. *Sears,* 421 U.S. at 149–51, 95 S.Ct. 1504. Essentially, this exemption serves

> to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been formally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action.

*Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 866 (D.C.Cir.1980).

■■■ In order for the deliberative process privilege to apply, the document in question must be both predecisional and deliberative, meaning that it must be (1) "antecedent to the adoption of an agency policy," *Jordan v. United States Dep't of Justice,* 591 F.2d 753, 774 (D.C.Cir.1978), and (2) "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Vaughn,* 523 F.2d at 1144. Purely factual information is generally considered non-deliberative and is not typically covered by this exemption. *See Coastal States,* 617 F.2d at 867. Such information must therefore be disclosed even when contained in an otherwise protected document, unless the factual material is "inextricably intertwined" with, or incapable of being segregated from, the exempt material. *See Army Times Publ'g Co. v. Dep't of Air Force,* 998 F.2d 1067, 1071 (D.C.Cir.1993) ("Exemption 5 applies only to the deliberative portion of a document and not to any purely factual, non-exempt information the document contains.

Non-exempt information must be disclosed if it is reasonably segregable from exempt portions of the record, and the agency bears the burden of showing that no such segregable information exists.") (internal quotations omitted). "[T]he key question in Exemption 5 cases [is] whether the disclosure of materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Dudman Communications Corp. v. Dep't of the Air Force,* 815 F.2d 1565, 1568 (D.C.Cir.1987).

 With these guiding principles in mind, the Court has reviewed the document *in camera* and concluded that defendant has improperly withheld this memorandum. As plaintiff correctly argues, the OGC memorandum is analogous to the Technical Assistance memoranda ("TAs") ordered released in *Tax Analysts v. Internal Revenue Service,* 294 F.3d 71 (D.C.Cir. 2002) (*"Tax Analysts II "*), and as such, it is neither predecisional nor deliberative. In *Tax Analysts II,* the Court addressed FOIA requests for the disclosure of TAs issued by the IRS. TAs are prepared by IRS attorneys in response to requests from many different offices for many different purposes. *Id.* at 74. In *Tax Analysts II,* the three TAs had been issued by IRS's Office of Chief Counsel to program managers—two of them concerned specific taxpayers or classes of taxpayers and one concerned the interpretation of the internal revenue laws generally. *Id.* at 80.

In holding that Exemption 5 did not protect these documents, the D.C. Circuit first endorsed the district court's holding that the TAs were sufficiently similar to the Field Service Advice Memoranda ("FSAs"), which the Court had found to be outside the deliberative process privilege in *Tax Analysts v. Internal Revenue Ser-*

*vice,* 117 F.3d 607 (D.C.Cir.1997) (*"Tax Analysts I "*):

> Like FSAs, TAs are issued by OCC and sent to IRS personnel in response to official queries. FSAs were issued to field attorneys, revenue agents, and appeals officers, while TAs are issued to program managers. FSAs usually dealt with particular taxpayers, as do four of the TAs in this case. The TA concerning general procedures reflects OCC's considered position on a precise issue. FSAs and these TAs both contain legal analysis, conclusions, and advice.

*Tax Analysts II,* 294 F.3d at 80 (internal citations omitted).

The OGC memorandum appears to be indistinguishable from both the TA and the FSAs. Like those documents, the May 18, 1998 memorandum was issued by the agency General Counsel's office in response to an inquiry from a program office. (Robbins Decl. ¶ 10.) The document contains legal determinations relevant to the adoption of a government-wide policy. (*Id.*) Indeed, the OGC memorandum conclusively sets forth the agency's legal position on that issue, and there is nothing on the face of the document or in any of the agency's submissions to support an argument that this memorandum was part of a predecisional process. This is highly significant to the Exemption 5 analysis, as the D.C. Circuit recognized in *Tax Analysts I*:

> Rather than documents produced in the process of formulating policy, FSAs are themselves statements of an agency's legal position and, as such, cannot be viewed as predecisional. Although FSAs may precede the field office's decision in a particular taxpayer's case, they do not precede the decision regarding the agency's legal position. Representing the considered view of the Chief Counsel's national office on significant tax law issues, FSAs do not reflect the

"give-and-take" that characterizes deliberative materials. The IRS tells us that FSAs may evaluate the strengths and weaknesses of alternative views. But that does not make them deliberative. The government's opinion about what is not the law and why it is not the law is as much a statement of government policy as its opinion about what the law is.

117 F.3d at 617. The Court reiterated this position in *Tax Analysts II*:

> IRS argues that while the disputed TAs to program managers may be the final word of OCC, they are issued to program officers who make the final decisions about their programs. IRS characterizes the TAs as part of a dialogue among equals, rather than pronouncements from senior officials to junior field agents. These arguments are unpersuasive. It is not necessary that the TAs reflect the final *programmatic* decisions of the program officers who request them. It is enough that they represent OCC's final *legal* position concerning the Internal Revenue Code, tax exemptions, and proper procedures.

294 F.3d at 81 (emphasis in original).

In these crucial respects, the OGC memo is identical to the TAs and FSAs. It is a clear statement of OGC's legal position on a policy requiring examining offices not to issue multiple certificates for single interdisciplinary positions. As such, under the law of this Circuit, it is not shielded from disclosure by the deliberative process privilege merely because it was issued before a programmatic decision based on that legal opinion was finalized. Further, even if the document was not formally binding on the program manager who requested it, that does not mean that it should be treated as anything other than a considered and conclusive declaration of

the agency's legal position. *See Tax Analysts I*, 117 F.3d at 617.

This conclusion is bolstered by two other considerations explored in *Tax Analysts II*. First, the tone of the memo is authoritative; the memorandum sets forth its opinion without any phrases such as "We believe" or "We suggest," and further, there is nothing to suggest that the release of the document would create public confusion. *See also supra*, note 2. The Court in *Tax Analysts II* referenced the declaratory tone to support its finding that the TAs there were not predecisional and deliberative, and contrasted this with the tone of the five other TAs that contained language which suggested "that they were prepared merely to 'discuss the wisdom or merits of a particular agency policy, or recommend new agency policy, raising the possibility that their disclosure would mislead the public.'" 294 F.3d at 81 (quoting *Coastal States*, 617 F.2d at 869).

Second, the path that the OGC memorandum travelled supports plaintiff's request for its release. The document moved "horizontally" between agency components, passing from the OGC to an OPM program office. In *Tax Analysts II*, the D.C. Circuit relied on the fact that the TAs had taken a similar journey—from OCC to the agency's program officers—in finding that Exemption 5 did not apply. *Id.; see also Coastal States*, 617 F.2d at 868 ("The identity of the parties to the memorandum is important; a document from a subordinate to a superior officer is more likely to be predecisional.") In contrast, as the Court in *Tax Analysts II* pointed out, a similar document that travelled upward from the General Counsel's office to the Director of the agency may be protected by Exemption 5. *See Tax Analysts II*, 294 F.3d at 81. As in that case, however, the horizontal movement of the document here simply does not match the "classic case of

the deliberative process at work," which involves a vertically-moving memorandum simply recommending legal strategy. *See Murphy v. Dep't of the Army,* 613 F.2d 1151, 1154 (D.C.Cir.1979).

In sum, a "strong theme" of this Circuit's deliberative process opinions "has been that an agency will not be permitted to develop a body of 'secret law,' used by it in the discharge of its regulatory duties and in its dealings with the public, but hidden behind a veil of privilege because it is not designated as 'formal,' 'binding,' or 'final.'" *Coastal States,* 617 F.2d at 867. The present case fits this pattern perfectly. Because the memo at issue describes OPM's legal position in terms and under circumstances strongly suggestive of finality, the agency may not claim deliberative process to shield its articulation of that position.

### CONCLUSION

For the reasons given above, defendant's motion for summary judgment is denied, and OPM is ordered to release the document requested by plaintiff within fourteen (14) days. Given the posture of the case, the Court will also enter judgment in favor of the plaintiff. *See Judicial Watch v. Dep't of Commerce,* 34 F.Supp.2d 28, 45 (D.D.C.1998).

### *ORDER*

Upon consideration of Defendant United States Office of Personnel Management Motion for Summary Judgment, as well as plaintiff's memorandum in opposition thereto and defendant's reply, and for the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that defendant's motion for summary judgment [# 2] is **DENIED;** it is

**FURTHER ORDERED** that plaintiff's cross-motion for discovery is **DENIED** as moot; it is

**FURTHER ORDERED** that defendant must release the document requested by plaintiff within fourteen (14) days; and it is

**FURTHER ORDERED** that judgment is entered for the plaintiff.

**SO ORDERED.**